UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No: 2:15-cr-66-FtM-29CM

JESUS RESENDIZ-GUEVARA

_____

REPORT AND RECOMMENDATION[1]

This matter comes before the Court upon referral from the Honorable John E. Steele, United States District Judge, for a Report and Recommendation as to the appropriate disposition of this case (Doc. 21).  Judge Steele ordered the parties to submit supplemental briefing within fourteen (14) days of his order referring this matter to the undersigned.  On September 17, 2015, Defendant Jesus Resendiz-Guevara, through counsel, filed a Memorandum of Law in Support of Dismissal and Motion to Dismiss (Doc. 22), and on September 18, 2015, the Government filed its Memorandum of Law Regarding Dismissal of Indictment (Doc. 23).  The motion to dismiss therefore is ripe for review, and for the reasons that follow the Court recommends that the indictment be dismissed without prejudice.

I.   Background and Procedural History

On May 13, 2015, the grand jury returned a single count indictment charging Defendant, Jesus Resendiz-Guevara, with illegal reentry in violation of 8 U.S.C.

---

[1] A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

§ 1326(a).  The Honorable Douglas N. Frazier, United States Magistrate Judge, held a detention hearing on June 25, 2015, at which the Government argued Defendant was a risk of flight and therefore should be detained.  *See* Doc. 10 (minute entry). Defendant argued for release, stating there were conditions that could be fashioned to permit Defendant's pretrial release.  *Id.*  Judge Frazier noted that an ICE detainer had been filed in this case, but still determined that conditions could be fashioned[2] and released Defendant on a $50,000.00 bond, secured by an agreement to forfeit two mobile homes.  Docs. 10, 11.  Judge Frazier stayed Defendant's release for ten (10) days to allow the Government the opportunity to appeal to the district court the decision to release Defendant on bond.  No appeal was taken.

On July 13, 2015, the Honorable Sheri Polster Chappell held a status conference in this case, at which the Court was informed that Defendant had been deported.  *See* Doc. 15 (minute entry).  This case subsequently was set for the trial term beginning August 3, 2015.  Doc. 16.  On July 22, 2015, Defendant, through counsel, filed an Unopposed Motion to Exonerate Bond requesting the bond be exonerated because Defendant had been deported, and therefore it was impossible for him lawfully to appear in court.  Doc. 17.  The unopposed motion states that on the same day the Magistrate Judge entered the release order (after the Government failed to appeal Defendant's release within the time permitted), Defendant was taken

---

[2] The Court imposed the following conditions: report as directed by the Pretrial Services Office; obtain no passport; refrain from possessing a firearm, destructive device, or other dangerous weapon; refrain from excessive consumption of alcoholic beverages; refrain from use or unlawful possession of narcotic drugs or illegal substances absent prior written approval of Pretrial Services or as lawfully prescribed; and report any contact with law enforcement.  Doc. 11 at 2.

into custody by ICE on the outstanding detainer. *Id.* at 2. At no point was Defendant released from custody. *Id.* Defendant's family retained a second attorney to assist with Defendant's immigration matters, but Defendant was deported before the immigration attorney could pursue the matter. *Id.* The Honorable Mac R. McCoy, United States Magistrate Judge, entered an Order granting Defendant's motion to exonerate the bond and releasing the collateral on July 24, 2014. Doc. 18.

On August 19, 2015, after nearly one month had elapsed and no action had been taken in this case, Judge Steele entered an Order requiring the Government to show cause why the indictment should not be dismissed without prejudice. Doc. 19. The Government timely filed a response, in which it noted that it argued for detention at the hearing in part because Defendant still was subject to deportation by the Department of Homeland Security ("DHS") even if the Court granted bond, and asserting that dismissal of the indictment is not warranted where there was no flagrant prosecutorial misconduct and because DHS acted lawfully in deporting Defendant once he was released from the Court's jurisdiction and the physical custody of the United States Marshals Service. Doc. 20. On September 3, 2015, this matter was referred to the undersigned for a Report and Recommendation, and the parties were directed to file any additional legal memoranda. Defendant filed a Memorandum of Law in Support of Dismissal and Motion to Dismiss. Doc 22. The Government filed its Memorandum of Law Regarding Dismissal of Indictment. Doc. 23.

## II.  Analysis

Defendant contends that the indictment should be dismissed because the Government essentially abandoned the prosecution by deporting Defendant, or allowing him to be deported.  Doc. 22.  Defendant further asserts that the deportation occurred in violation of applicable law, the Court's order setting conditions of release, Defendant's rights under the Bail Reform Act, his Fifth Amendment right to due process, Sixth Amendment right to counsel and speedy trial rights.  *Id.*  Finally, Defendant contends there are no lesser remedies available, and therefore dismissal is warranted.  *Id.*

The Government, by contrast, contends that the Court cannot, or should not, exercise its supervisory authority to *sua sponte* dismiss the indictment where there was no prosecutorial misconduct, DHS followed immigration regulations in deporting Defendant and where the Court relinquished its primary jurisdiction over Defendant by releasing him with conditions at the request of his counsel.  Doc. 23.  Here, the Court agrees with Defendant that the Government has abandoned its prosecution, that Defendant's constitutional rights have been violated, and that because Defendant's constitutional rights were violated, this Court may use its supervisory powers to dismiss the indictment without prejudice.

Other courts [3] have addressed similar situations and engaged in lengthy

---

[3] The Court did not locate any cases in which the Eleventh Circuit addressed the issue presented before the Court; and therefore the Court cites to other courts, including district courts in this circuit, as persuasive authority. In a case of first impression, courts may seek guidance from analogous cases in other circuits.  *United States v. Davenport*, 935 F.2d 1223, 1232 (11th Cir. 1991).

discussions attempting to resolve an apparent conflict between the provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, and the Bail Reform Act ("BRA"), 18 U.S.C. § 3141 *et seq.*, or at least the interplay between those statutes. *See, e.g.*, *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (D. Or. 2012); *United States v. Blas*, 2013 WL 5317228 (S.D. Ala. Sept. 20, 2013).  The most common issue arising out of this conflict in the context of criminal cases has been pretrial detention in cases with an existing ICE[4] detainer.  At the outset, the Court notes that many of the cases cited by the Government in opposition to dismissal involve situations in which the dismissal was *with* prejudice and therefore are at least partially inapposite here, where the Court contemplates dismissal without prejudice.[5] Nevertheless, a brief discussion of the relevant provisions of the INA and BRA is required.

The BRA provides that a defendant should be released unless a judge finds that no condition or combination of conditions reasonably will assure the defendant's appearance at trial, or that the defendant presents a danger to the community. 18

---

[4] Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE"), is the government's primary agency responsible for the removal and deportation of aliens who are unlawfully in the United States. "The duties performed by ICE were previously undertaken by the Immigration and Naturalization Service ("INS") within the United States Department of Justice. The Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135, created both the U.S. Department of Homeland Security and the cabinet-level position of Secretary of Homeland Security. ICE was created under the authority of the Homeland Security Act and now ultimately reports to the Secretary for Homeland Security. The INS ceased to exist under the name in 2003 when most of its functions were transferred to the Department of Homeland Security." *Trujillo-Alvarez*, 900 F. Supp. 2d at 1169.

[5] Furthermore, many of the cases cited by the Government regarding DHS authority to arrest and to detain Defendant include issues relevant to an appeal of the release order to the district court, which the Government did not do in this case and which is not for this Court to decide. *See e.g., United States v. Sanchez-Valdivia*, 2008 WL 5104688 (D. Minn. Nov. 26, 2008); *United States v. Todd*, 2009 WL 174957 (M.D. Ala. Jan. 23, 2009); *United States v. Lozano*, 2009 WL 3834081 (M.D. Ala. Nov. 16, 2009).

U.S.C. §§ 3142(a), (e), (f). The BRA establishes a set of factors that the Court may consider when determining whether there are conditions of release that will reasonably assure the defendant's appearance at trial. 18 U.S.C. § 3142(g). While a person's legal status in the United States is not a factor, the BRA does not exclude deportable aliens from consideration for release or detention in criminal proceedings. *See* 18 U.S.C. §§ 3142(a)(3) and (d). If a judicial officer determines that a person is not a citizen of the United States or lawfully admitted for permanent residence in the United States and that person may "flee or pose a danger to any other person or the community," the judicial officer may temporarily detain that person for a period of no more than 10 days so that the attorney for the government may notify the "appropriate official of the Immigration and Naturalization Service." 18 U.S.C. § 3142(d).

"As a number of district courts have persuasively explained, the risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition." *United States v. Santos-Flores*, 794 F. 3d 1088, 1091 (9th Cir. 2015). *See also United States v. Barrera-Omana,* 638 F.Supp. 2d at 1111-12 (D. Minn. 2009) ("The Court must conclude that the risk of flight with which Congress was concerned was not a flight flown or paid for by a federal governmental agency"); *United States v. Marinez-Patino*, 2011 WL 902466, at *4 (N.D. Ill. Mar. 14, 2011) ("[R]isk of *involuntary* removal pursuant to an ICE detainer does not create a serious risk that a defendant will *voluntarily* flee.") If ICE is aware of the person's arrest, or if the official does not take custody of the person within the ten-day period, the BRA

directs the Court to "apply the normal release and detention rules to the deportable alien without regard to the laws governing release in [ICE] deportation proceeding." *United States v. Adomako*, 150 F.Supp.2d 1302, 1307 (M.D. Fla. 2001) (citing 18 U.S.C. § 3142(d)).

In the instant case, DHS referred Defendant to the U.S. Attorney for prosecution; therefore DHS was aware of Defendant's arrest. Doc. 20 at 1. At the detention hearing, the Government argued that because Defendant had an outstanding removal order, he was a flight risk; and there were no conditions of release that could "assure his presence for trial." Doc. 20 at 4. Nevertheless, Judge Frazier found that there were such conditions and accordingly released Defendant on a bond with surety and subject to the conditions described previously. *See* note 2, *supra*. The Government was given a 10-day opportunity to appeal the decision to release Defendant on bond, however it chose not to do so. Because the Government chose not to appeal the order of release, whether the court should have detained Defendant is not before the Court now. Rather, the Court must address what should be done now that Defendant is in Mexico and is unable to return to the United States to stand trial.

When an alien is subject to removal, the INA requires the Attorney General[6] to remove the alien from the United States within a period of 90 days. 8 U.S.C. § 1231(a)(1)(A). This 90-day "removal period" begins to run on the latest of the

---

[6] Now the Secretary of Homeland Security. *See* note 4, *supra*.

following:

    (i)      The date the order of removal becomes administratively final.

    (ii)     If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

    (iii)    if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement).

8 U.S.C. § 1231(a)(1)(B). "Although the statutory phrase 'detained or released from confinement' is not defined, in the context of the entirety of Section 1231[,] the most reasonable interpretation of that phrase is that it refers to release from incarceration pursuant to a final judgment of conviction as entered by a court of competent jurisdiction." *Trujillo-Alvarez*, 900 F. Supp. at 1174. Furthermore, "[a] person who has been released subject to conditions of pretrial supervision is still 'confined' because they are subject to restraints not shared by the public generally that significantly confine and restrain their freedom." *Id.* at 1175. "A prior order of removal is reinstated from its original date . . . and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5). Furthermore, "[p]arole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal." *Id.* § 1231(a)(4).

The Court is confronted with a situation in which two Executive Branch agencies – the United States Attorney's Office and ICE – began a concerted effort to serve the public interest as they saw fit with regard to this Defendant.[7] ICE took

---

[7] As the court in *Barrera-Omana* aptly described in an analogous situation, "[t]he problem here is not that defendant will absent himself from the jurisdiction, but that two Article II [Executive Branch] agencies will not coordinate their respective efforts. The

custody of Defendant in April 2015. Doc. 20 at 1. At that point, ICE could have used its authority under 8 U.S.C. § 1231(a)(5) and deported him immediately. Instead, ICE turned Defendant over to the U.S. Attorney's office for prosecution. Immediately upon Defendant's pretrial release, ICE took custody of Defendant and deported him, thus thwarting his criminal prosecution.

The Government argues that DHS was mandated to remove Defendant within 90 days. The Court is not convinced by this argument. First, the 90-day rule applies after the Defendant is released from confinement, which would not occur until Defendant is released from incarceration pursuant to a final judgment, which of course did not occur in this case. Second, the Attorney General has discretion to stay removal if the Attorney General decides that "the alien is needed to testify in the prosecution of a person for a violation of a law of the United States or of any State." 8 U.S.C. § 1231(c)(2)(A)(ii). The Government did not provide any reason why it could not have communicated with the Attorney General, e.g. ICE, to stay the removal proceeding for the pendency of Defendant's prosecution. It was DHS that referred Defendant to the U.S. Attorney's office for prosecution. The Court cannot contemplate why the two Executive Branch agencies that began a concerted effort to deal with Defendant suddenly changed course. Third, Section 215.2 of the INA authorizes a departure-control officer to temporarily prevent an alien's departure "if his interests would be prejudicial to the interests of the United States." 8 C.F.R.

---

Executive, in the person of the Attorney General, wishes to prosecute defendant. The same executive, in the person of the Assistant Secretary of Homeland Security for ICE, may want to deport him." 638 F. Supp. 2d at 111-12.

§ 215.2. Section 215.3 lists eleven categories of aliens whose departure would be prejudicial to the interests of the United States, including "[a]ny alien who is needed in the United States as a witness in, or as a party to, any criminal case under investigation or pending in a court in the United States: *Provided*, That any alien who is a witness in, or a party to, any criminal case pending in any criminal court proceeding may be permitted to depart from the United States with the consent of the appropriate prosecuting authority, unless such alien is otherwise prohibited from departing under the provisions of this part." 8 C.F.R. § 215.3(g).

Some courts have been skeptical to rule that the departure-control mechanism may be utilized to stop the removal of a person subject to an ICE detainer. *Marinez-Patino*, 2011 WL 902466, at *6 (citing *State v. Fajardo–Santos,* 973 A.2d at 938 for the proposition that the departure-control mechanism applies to aliens seeking to depart the United States voluntarily rather than through DHS removal.) Other courts have held that it is the government's burden to show that it lacks the ability to defer a defendant's removal through a stay or departure control. *See United States v. Stepanyan*, 2015 WL 4498572, at *2 (N.D. Cal. July 23, 2015) (*citing* United States v. Castro-Inzunza, 2012 WL 6622075 (9th Cir. July 23, 2012). In light of Section 215.3(g) and that initially there was cooperation between ICE and the U.S. Attorney's office here, the Court believes that the Government must show why it lacked the ability to prevent Defendant's departure through a stay or departure control, which it failed to do in the instant case.

Defendant and the Government have provided several cases in which courts

have confronted the issue of pretrial detention for defendants with ICE detainers; however, neither Defendant nor the Government have provided any case law in which the defendant has already been deported in the midst of his prosecution, and the Court is not aware of any. The Court in *Marinez-Patino* contemplated this issue but chose to "reject the proposition that if the defendant were released on bond, ICE would act in a way that can only be described as irrational." 2011 WL 902466, at *7. Other courts addressing the possibility of deportation during a criminal prosecution have explained that the Executive Branch has two choices when an alien unlawfully present in the United States after prior removal is facing criminal prosecution: The DHS may proceed administratively with deportation, or defer removal for the alien to face criminal prosecution. *Santos-Flores*, 794 F. 3d at 1091; *Blas*, 2013 WL 5317228, at *7-8; *Marinez-Patino*, 2011 WL 902466, at *8; *Trujillo-Alvarez*, 900 F. Supp. at 1180-1181; *United States v. Clemente-Rojo*, 2014 WL 1400690, at *3 n.2 (D. Kan. Apr. 10, 2014).

In *Blas*, the court held that the Executive Branch has discretion to either deport the defendant or prosecute him. The court, however, noted that if the Executive Branch "opts for prosecution over deportation . . . and invokes the jurisdiction of this Court, this Court has priority or first standing and administrative deportation proceedings must take a backseat to court proceedings until the criminal prosecution comes to an end." 2013 WL 5317228, at *3. "The Executive Branch by regulation has made the determination that a criminal proceeding takes priority over removal and deportation." *Id.* at 7. (*citing* 8 C.F.R. §§ 215.2, 215.3(g)). The court

there did not agree with the government that "it can proceed on a dual criminal prosecution and deportation track, such that if deportation had been the chosen course the government could have kept the indictment open in case Blas illegally reentered this country again subsequent to his deportation. Such argument is not only contrary to case law . . . but, as well, is contrary to the requirements of the Speedy Trial Act." *Id.* (*citations omitted*).

Similarly, the court in *Marinez-Patino* held "[b]y delivering the defendant to the United States Attorney's office in this case, rather than simply deporting him immediately, ICE yielded to the judgment of the prosecutorial arm of the Executive Branch that the public's interest in criminally prosecuting the defendant was greater than the public's interest in swiftly deporting him." 2011 WL 902466, at *7. The Executive Branch may choose to postpone removal and deportation of a defendant while the U.S. Attorney's office brings a criminal prosecution; "[w]hich pathway to take in any given case is a policy decision, and it is for the Executive Branch to determine." *Truillo*-Alvarez, 900 F. Supp. 2d at 1169-70. In *Truillo*-Alvarez, a magistrate judge ordered the release of a defendant charged with illegal reentry. *Id.* at 1170. The government did not seek review of this decision, however it allowed the defendant to transfer into administrative immigration custody, but without permitting deportation proceedings to take place during the pendency of the criminal case. *Id.* at 1172. The district court ordered that if the government did not release defendant under the previously determined conditions, the case would be dismissed with prejudice. *Id.* at 1181.

Relying on *Blas* and *Trujillo-Alvarez*, the district judge in *Clemente-Rojo* ordered that defendant's release on bond be stayed for 48 hours so that the Executive Branch could decide whether to proceed with prosecution or exercise the detainer. *Clemente-Rojo*, 2014 WL 1400690, at *3 n.2. If the Executive Branch elected to exercise the detainer, the court would dismiss the indictment with prejudice. According to the court, this election "makes both practical and economic sense." *Id*.

Here, the Government argues that a district court "cannot interrupt removal proceedings or DHS's authority to execute a removal order." Doc. 20 at 5. The Court does not disagree with this statement; however, once the Executive Branch makes an election to proceed with the removal proceedings, the prosecution cannot stand. It appears from the record that once DHS turned Defendant over to the U.S. Attorney for prosecution, it chose to defer removal for prosecution. As soon as Defendant was released, however, DHS changed course and proceeded to deport Defendant. What began as a cooperative effort between DHS and the U.S. Attorney's office with respect to Defendant quickly shifted course immediately upon Defendant's pretrial release. The Court is not aware of the reason for this, however it agrees with the court in *Trujillo-Alvarez* that "[i]t is not appropriate for an Article III judge to resolve Executive Branch turf battles. . . This court ought not run interference for the prosecuting arm of the government." 900 F. Supp. 2d at 1180, *citing United Barrera-Omana*, 638 F.Supp. 2d at 1111-12. Therefore, because the Executive Branch elected to prioritize deportation over the criminal prosecution, the indictment should be dismissed.

Dismissal of the indictment also is warranted on constitutional grounds. Defendant argues that his Fifth Amendment right to due process and Sixth Amendment right to counsel have been violated. The Fifth Amendment right to due process "guarantees that a criminal defendant will be treated with 'that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.'" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982). In a case where the government deports a witness to the crime charged in an indictment, the defendant must show that the evidence lost would be both material and favorable to the defense. *Id.* at 872-73. *See also United States v. Saintil*, 753 F.2d 984, 987 (11th Cir. 1985) ("To prove a violation of a defendant's constitutional rights resulting from the government's deportation of a witness, a defendant "must show some reasonable basis to believe that the deported witness would testify to material and favorable facts'") (*citations omitted*). In the instant case, Defendant is charged with a single count of illegal re-entry in the United States. Neither the Government nor Defendant have stated whether there are any other witnesses to this alleged crime. Defendant maintains that because he is deported he is unable in any way to prepare a defense to the charge. The Court agrees.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." U.S. Const.

amend. VI. It is clear that Defendant's deportation presents a clear challenge, as his counsel rightly states, to his ability to consult with counsel, to review the evidence against him and to prepare a defense to the charge. Doc. 22. This constitutes a violation of his Sixth Amendment right to counsel. The Government does not address this issue at all and has provided no remedy for this violation.

Defendant further argues that his deportation occurred in violation of the Speedy Trial Act, 18 U.S.C § 3161 *et seq*. The Speedy Trial Act requires Defendant be tried within 70 days from the filing date of the information or indictment, or from the date Defendant first appeared before a judicial officer of the court, whichever occurs later. 18 U.S.C. § 3161(c)(1). In calculating this period, the Act provides for certain exclusions as listed in Section § 3161(h). A relevant exclusion to this case is "[a]ny period of delay resulting from other proceedings concerning the defendant, *including but not limited to* -- delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h). Furthermore, "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness" is excluded. 18 U.S.C. § 3161(h)(3)(A). The Act prescribes a defendant "shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." 18 U.S.C. § 3161(h)(3)(B).

It is undisputed that Defendant's unavailability to face the charges against him is not due to his own volition but the Executive Branch's decision to deport him.

The Court agrees with Defendant and the cited authority that there is no suggestion § 3161(h)(3) applies where the Government causes the unavailability. Furthermore, the Government has not provided any information to the Court on what steps, if any, it took to obtain his presence at trial. As discussed above, this information could have been supplied by the Government in aiding the Court's understanding as to why a stay or a departure-control mechanism was not utilized. Accordingly, any delay also caused by the pending motion also is a result of Defendant's deportation; and therefore such delay should not be excluded from the speedy trial calculation.[8]

"Guided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or Congress. The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally, as a remedy designed to deter illegal conduct." *United States v. Hasting*, 461 U.S. 499 (1983). The Government's argument and much of the case law it cited suggest that this case cannot be dismissed because there was no prosecutorial misconduct. Furthermore, many of the cases

---

[8] The indictment was returned on May 15, 2015. Doc. 1. Defendant appeared at his initial appearance on June 22, 2015. Doc. 5 (minute entry). Therefore, the 70-day period began to run on June 23, 2015. The 70th day from that date was September 1, 2015. Exclusion of time for any motions filed and pending is automatic, and a party need not show actual delay. *United States v. Stafford*, 697 F.2d 1368, 1371-72 (11th Cir. 1983). On September 23, 2015, Defendant filed an unopposed Motion to Release Bond. Doc. 17. The motion was granted on September 24, 2015. Doc. 18. On August 19, 2015 the district court entered an Order to Show Cause. Doc. 19. On September 18, 2015 Defendant filed his Motion Dismiss. Doc. 22.

cited by the Government involved the issue of whether certain discovery violations amounted to prosecutorial misconduct that warrant dismissal with prejudice. Defendant in this case is not seeking dismissal of the indictment based on "prosecutorial misconduct."

The Eleventh Circuit has not reached the issue of whether prejudice is required before the court can use its supervisory authority to dismiss an indictment. The court of appeals confronted the issue in two separate cases alleging prosecutorial misconduct but ultimately held in each case that no prosecutorial misconduct existed, therefore there was no need to determine if prejudice was required. *United States v. Holloway*, 778 F.2d 653, 658-59 (11th Cir. 1985); *United States v. Pabian,* 704 F.2d 1533, 1540 (11th Cir.1983). Other circuit courts differ on whether a showing of prejudice is required to dismiss an indictment when the court is acting under its supervisory authority or its duty to protect the constitutional rights of defendants. See *Holloway*, 778 F.2d 653, 658-59 (*discussing cases*); *Pabian,* 704 F.2d 1533, 1540 (discussing cases). The Government cites to *Holloway* for its proposition that "whether the court is acting under its supervisory authority or its duty to protect the constitutional rights of defendants, an indictment may be dismissed only where the defendant's case has been unfairly prejudiced." Doc. 20 at 3. What the Government fails to note, however, is that the *Holloway* court cited to *United States v. McKenzie*, 678 F.2d 629 (5th Cir.) *cert. denied*, 459 U.S. 1038 (1982) in that quotation and noted that "[t]his case is not precedent binding in this Court." 778 F.2d at 656. *But see United States v. Deluca*, 2014 WL 3341345, at *7-8 (M.D. Fla. July 8, 2014) ("A

criminal defendant has the burden to show prejudice to obtain dismissal of an indictment"). As noted above, the Court believes that Defendant's Fifth and Sixth Amendment rights have been violated, and, thus the Court may use its supervisory power to dismiss the indictment. The Court finds that Defendant's constitutional violations caused prejudice to Defendant in that his absence from the United States prevents him from consulting with his counsel, preparing a defense, appearing at his trial to face the charges or appearing as a witness, and otherwise preparing a defense. Therefore, without deciding the issue of whether prejudice is required, Defendant would meet this burden if it were.

### III.  Conclusion

Accordingly, for the reasons stated in this Report and Recommendation, it is hereby respectfully **RECOMMENDED** that Defendant's Motion to Dismiss Indictment be **GRANTED**, and the indictment be **DISMISSED** without prejudice.

**DONE** and **ENTERED** in Fort Myers, Florida on this 21st day of October, 2015.

CAROL MIRANDO
United States Magistrate Judge

Copies:

The Honorable John E. Steele
United States District Judge

Counsel of record